CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
June 06, 2024
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **MICHAEL BARTLEY,** ) | |
| Plaintiff, ) | Case No. 7:23-cv-00056 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| **ADAM COLLINS, et al.,** ) | Chief United States District Judge |
| Defendants. ) | |

## MEMORANDUM OPINION

Michael Bartley, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against members of the correctional and medical staff at Keen Mountain Correctional Center, where he fell from a top bunk after allegedly suffering a seizure. Bartley claims that the defendants acted with deliberate indifference to his health and safety in violation of the Eighth Amendment. The case is presently before the court on a motion for summary judgment filed by Nurse C. Smith, Nurse R. Harmon, and Nurse L. Trent (collectively, "the Nurses"). ECF No. 42. For the reasons set forth below, the Nurses' motion is **GRANTED** with respect to Bartley's claim that the Nurses acted with deliberate indifference prior to the fall. Because the motion does not specifically address Bartley's claim that Nurse Trent acted with deliberate indifference to Bartley's need for medical attention after the fall, that claim will proceed at this time.

## Factual Background

Bartley suffers from a seizure disorder. Smith Aff. ¶ 3, ECF No. 43-2. Because of his medical condition, Bartley was placed on "bottom bunk status" after he entered into the custody of the Virginia Department of Corrections ("VDOC"). Id. His "indefinite[]" need for

a bottom bunk was flagged in CORIS, the electronic case management system used by the VDOC. CORIS Offender Alert, ECF No. 43-1.

At Keen Mountain, "[c]ell and bunk assignments are made by security personnel in Classification." Smith Aff. ¶ 4. On or about February 5, 2022, security personnel reassigned Bartley from a bottom bunk in one cell to a top bunk in another cell. Compl. ¶¶ 17–18, ECF No. 1. Despite being told that Bartley was required to have a bottom bunk because of his seizure condition, Sgt. Deel required Bartley to move. Id.

"Sometime between February 5 and February 15, 2022, [Bartley] spoke with [Nurse Smith] about his bunk assignment." Smith Aff. ¶ 6. Bartley also spoke with Nurse Harmon. Harmon Aff. ¶ 6, ECF No. 43-3. Smith and Harmon both knew that Bartley had bottom bunk status because of his seizure disorder. Smith Aff. ¶ 3; Harmon ¶ 3. Neither nurse knew that Bartley had been assigned to a top bunk until he informed them of the situation. Smith Aff. ¶ 6; Harmon Aff. ¶ 6.

Upon learning that Bartley had been moved to a top bunk, Nurse Smith "immediately spoke with the Watch Commander who was on duty, who said that he would look into it." Smith Aff. ¶ 7. Smith "also spoke with Adam Collins, the Housing Unit Manager, who said that he would look into it." Id. Smith had no further discussions with Bartley regarding the problem. Id. at ¶ 8.

After speaking with Bartley, Nurse Harmon also "immediately called Adam Collins . . . and informed him that there was a medical order for [Bartley] to have a bottom bunk and that it needed to be accommodated." Harmon Aff. ¶ 7. Collins told Harmon that he would

make sure that Bartley was moved. Id. Harmon had no further discussions with Bartley regarding the problem. Id. at ¶ 8.

Unbeknownst to Smith and Harmon, Bartley was still being required to sleep on a top bunk as of February 16, 2022. See Smith Aff. ¶ 9; Harmon Aff. ¶ 9. At approximately 9:30 a.m. that night, Bartley began feeling dizzy and allegedly suffered a seizure. Compl. ¶ 24. He fell from the top bunk and struck his head on a piece of furniture. Id. at ¶ 25. He began vomiting, and his cellmate requested assistance. Id. at ¶¶ 25–26.

Nurse Trent was called to Bartley's housing unit, and Bartley informed her that he had fallen and hit his head. Trent Aff. ¶ 7, ECF No. 43-4. Trent and Bartley had not had any previous discussions regarding the new bunk assignment. Id. at ¶ 6. When Trent arrived at Bartley's cell, she "asked why he was on the top bunk and told the Sergeant who accompanied [her] into the cell that [Bartley] always had a bottom bunk because of his seizure disorder." Id. at ¶ 8.

According to the complaint, Bartley injured "his back, hip, wrist, elbow, ankle, groin area, and forehead" as a result of the fall. Compl. ¶ 24. Bartley alleges that he "tried the best . . . he could through the light-headedness and mental fogginess to express the extent of his injuries" to Nurse Trent. Id. at ¶ 27. He alleges that he was not taken to the infirmary until the next day and that he did not receive a "thorough examination" following the incident. Id. at ¶ 29. He claims that he continues to experience severe headaches and body pain as a result of the fall. Id. at ¶ 32.

## Procedural History

On January 23, 2023, Bartley filed this action under 42 U.S.C. § 1983 against the Nurses and five correctional officers. He asserts Eighth Amendment claims of deliberate indifference to his health and safety. He claims that the Nurses "exercised deliberate indifference by failing to provide a safe living condition for [his] epileptic seizures" and by failing to provide adequate "treatment." Compl. ¶ 37. Along with his complaint, Bartley filed a copy of the grievance paperwork that he submitted following the incident, in which he reported having talked to Nurse Smith and Nurse Harmon about his improper bunk assignment prior to falling from the top bunk on February 16, 2022. Compl. Ex. 1, ECF No. 1-1. Bartley also complained that the nurse who responded to his cell "did not have [him] admitted to medical even while exhibiting all signs of [a] serious concussion with possible fractures and internal injuries" and that he "was simply left in the cell without medical care in extreme pain where [he] could barely move." Id.

The Nurses responded to Bartley's complaint by filing a motion for summary judgment. ECF No. 42. In the memorandum filed in support of the motion, the Nurses argue that Bartley is unable to establish that they disregarded his medical need for a bottom bunk prior to the fall:

> [Nurse Smith and Nurse Harmon], who did not have the authority to reclassify plaintiff, immediately informed security personnel, who did have that authority, that plaintiff had a bottom bunk status for medical reasons and needed to be moved. There is no evidence that Nurse Smith or Nurse Harmon disregarded plaintiff's medical need.
>
> As to Nurse Trent, plaintiff does not allege that Nurse Trent had any knowledge that he was assigned to a top bunk prior to his fall. Indeed, Nurse Trent only learned of plaintiff's assignment

4

> when she reported to his cell after the fall. On these facts, plaintiff cannot establish that Nurse Trent disregarded plaintiff's medical need.

Defs.' Br. Supp. M. Summ. J. 6, ECF No. 43. The memorandum is not accompanied by any medical records and does not specifically address Bartley's claim that he did not receive adequate medical treatment after falling from the top bunk.

In response to the motion for summary judgment, Bartley filed a "reply brief." ECF No. 50. In the reply brief, Bartley does not dispute the sworn statements provided by Nurse Smith and Nurse Harmon. Nor does he dispute Nurse Trent's sworn statement that she had no interactions with him while he was assigned to the top bunk until after he fell on February 16, 2022. Instead, Bartley poses several "questions" in response to Trent's affidavit regarding her care and treatment of him following the fall. See, e.g., Reply Brief ¶ 1 ("If the plaintiff vomited after the fall but prior to the nurse arriving, then informed the nurse about it, why didn't the nurse ever mention it?"); id. at ¶ 2 ("If Nurse Trent wasn't assessing the patient for seizures or concussion, why was it necessary for her to violate protocol by entering the cell only to administer ibuprofen?"); id. at ¶ 5 ("Why didn't Nurse Trent insist upon placing the plaintiff in medical for observation overnight when she discovered his requirement for bottom bunk and evidence of concussion or seizure?"). Bartley asserts that his questions "must be answered." Id. at 1.

## Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if

5

it might affect the outcome of the suit under the governing law." Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013).[1] A dispute is "genuine" if "a reasonable jury could return a verdict for the non-moving party." Strothers v. City of Laurel, 895 F.3d 317, 326 (4th Cir. 2018).

When ruling on a motion for summary judgment, "[t]he court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." Shaw v. Foreman, 59 F.4th 121, 129 (4th Cir. 2023). To survive summary judgment, there must be sufficient evidence from which a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). "Conclusory or speculative allegations do not suffice to oppose a properly supported motion for summary judgment, nor does a mere scintilla of evidence." Matherly v. Andrews, 859 F.3d 264, 280 (4th Cir. 2017).

## Discussion

### I. Claim of Deliberate Indifference to Bartley's Need for a Bottom Bunk

"The Eighth Amendment, which is applicable to states through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). Prison officials also have a duty to provide "humane conditions of confinement." Farmer v. Brennan, 511 U.S. 825, 832

---

[1] Unless otherwise noted, the court omits internal citations, alterations, and quotation marks throughout this opinion.

(1994). A constitutional violation occurs "when a prison official demonstrates deliberate indifference to an inmate's serious medical needs," DePaola, 884 F.3d at 486, or to "conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834.

To establish an Eighth Amendment claim of deliberate indifference, an inmate must satisfy two elements. "First, the deprivation alleged must be, objectively, sufficiently serious." Id. Second, the inmate must show that the prison official acted with a "sufficiently culpable state of mind," specifically, "deliberate indifference" to the inmate's health or safety. Id. Deliberate indifference is an "exacting standard" that is not met by a showing of "mere negligence or even civil recklessness." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). The Supreme Court has explained that an official acts with deliberate indifference only when she "knows of and disregards an excessive risk to [an inmate's] health or safety." Farmer, 511 U.S. at 837. Specifically, the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference." Id. "And, in addition to subjectively recognizing that substantial risk, the prison official must subjectively be aware that [her] actions were inappropriate in light of that risk." Cox v. Quinn, 828 F.3d 227, 236 (4th Cir. 2016); see also Moss v. Harwood, 19 F.4th 614, 624 (4th Cir. 2021) ("[U]nder the subjective prong, [the plaintiff] can prevail only if the defendants subjectively recognized that there was such a risk [of serious harm] and that their actions were inappropriate in light of that risk.").

Applying these principles, the court concludes that the Nurses are entitled to summary judgment on the claim that they acted with deliberate indifference prior to the fall. Turning first to Nurse Smith and Nurse Harmon, the record reflects that both defendants knew that

7

Bartley had bottom bunk status because of his seizure disorder and that Bartley informed both defendants that he had been moved to a top bunk. "Mere knowledge of a substantial risk of serious harm, however, is insufficient to show deliberate indifference." Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1583 (11th Cir. 1995). Instead, an inmate must establish "that the official subjectively knew of and disregarded an excessive risk to the inmate's health or safety." Hixson v. Moran, 1 F.4th 297, 302 (4th Cir. 2021). Here, there is no evidence from which a reasonable jury could infer that Nurse Smith or Nurse Harmon consciously disregarded the risk posed by Bartley's top bunk assignment. It is undisputed that Nurse Smith and Nurse Harmon immediately contacted security personnel upon being informed of the problem and that they were informed that the officers contacted would look into and/or correct the problem. It also undisputed that neither Nurse had any further discussions with Bartley about his bunk assignment and that neither Nurse found out that Bartley had not been moved from the top bunk until after his fall on February 16, 2022. There is no evidence suggesting that Nurse Smith or Nurse Harmon "knew that their efforts to respond" to Bartley's requests for assistance were "inappropriate" or unsuccessful. Moss, 19 F.4th at 625. Thus, no reasonable jury could find, on this record, that Nurse Smith or Nurse Harmon acted with deliberate indifference to Bartley's need for a bottom bunk. Accordingly, Nurse Smith and Nurse Harmon are entitled to summary judgment.

With respect to Nurse Trent, the record reflects that this defendant also knew that Bartley had a seizure disorder and that he had bottom bunk status. See Trent Aff. ¶ 3. However, there is no evidence that Nurse Trent had any knowledge of Bartley being moved to a top bunk prior to his fall. Bartley does not allege that he spoke to Nurse Trent before

8

falling from the top bunk on February 16, 2022. Nor does he dispute her sworn statement that she "had no interactions with [Bartley] from February 5 through February 16, 2022, when he was assigned to the top bunk." Id. at ¶ 6. Thus, on this record, no reasonable jury could find that Nurse Trent acted with deliberate indifference prior to the fall. Therefore, Nurse Trent is entitled to summary judgment on this claim.

### II. Claim of Deliberate Indifference to Bartley's Need for Medical Treatment

As a pro se litigant, Bartley's submissions must be "liberally construed," and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Having reviewed the complaint and the attached exhibits, the court concludes that the complaint can be liberally construed to assert that Nurse Trent acted with deliberate indifference to his need for medical treatment following the fall. Because this claim is not specifically addressed in the memorandum filed by the Nurses, the court will permit Nurse Trent to file a second motion for summary judgment addressing the remaining claim against her. Additionally, the court will construe the questions posed in Bartley's reply brief as interrogatories directed to Nurse Trent and direct her to respond to the interrogatories in accordance with Federal Rule of Civil Procedure 33.

### Conclusion

For the reasons stated, the Nurses' motion for summary judgment is **GRANTED** with respect to any claim of deliberate indifference arising prior to Bartley's fall from the top bunk. Bartley's claim that Nurse Trent acted with deliberate indifference to his need for medical treatment after the fall will go forward at this time. An appropriate order will be entered.

9

Entered: June 5, 2024

Michael F. Urbanski
Chief U.S. District Judge
2024.06.05 17:54:35
-04'00'

Michael F. Urbanski
Chief United States District Judge

10